IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | No. 23 C 4977 |
| HOMETOWN COOPERATIVE APARTMENTS, INC., | ) ) ) | Judge Virginia M. Kendall |
| *Defendant*. | ) ) | |

## MEMORANDUM OPINION & ORDER

Following a disagreement regarding the amount of loss covered under an insurance policy, Plaintiff Philadelphia Indemnity Insurance Company brought a declaratory judgment action to determine whether Defendant Hometown Cooperative Apartments, Inc.'s appraisal demand implicates insurance coverage and law issues. (*See* Dkt. 1 ¶ 34). In its Answer, Hometown brings the affirmative defenses of breach of contract and breach of the covenant of good faith and fair dealing, and the counterclaims of breach of contract and bad faith. (Dkt. 23 at 21–26). On November 20, 2023, Philadelphia moved to strike the affirmative defenses and dismiss the counterclaims. (Dkt. 24). For the following reasons, Philadelphia's Motion to Strike and Dismiss [24] is granted.

## BACKGROUND

Philadelphia issued a policy of commercial property insurance ("Policy") to Hometown covering 63 apartment buildings for the period of March 11, 2019 through March 11, 2020. (Dkt. 1 at ¶¶ 7, 9). Following hailstorm damage to Hometown's properties on May 27, 2019, Hometown submitted a formal notice of loss to Philadelphia. (*Id.* at ¶ 10). Philadelphia opened a claim and

1

began its investigation, engaging Newman & Newman ("Newman") as their construction consultant and ESI as their forensic engineer. (*Id.* at ¶ 11). In turn, Hometown engaged Semmler Development, Inc. ("Semmler") and Adobe Exteriors, Inc. ("Adobe") as contractors to "quantify a scope and estimate of repairs [and] to make those repairs." (*Id.* at ¶ 15). Semmler and Adobe were not general contractors. (*Id.* at ¶¶ 65, 67). After Newman created an estimate (the "Newman Estimate") for the full tear-off and replacement of the roofs and sidings of the properties, Semmler and Adobe submitted an additional 13 "itemized requests for increases in the scope" of the estimate. (*Id.* at ¶¶ 14, 16–17). On May 26, 2021, Newman adjusted the Newman Estimate to allow for 12 of the requests, but "specifically excluded overhead and profit." (*Id.* at ¶ 18; Dkt. 1-3). The parties agreed to the revised Newman Estimate in the amount of $4,378,973.64 on June 30, 2021. (Dkt. 1 at ¶¶ 19–21; Dkt. 1-4 at 168; Dkt. 1-6). The parties also agreed May 27, 2019 was the date of loss under the Policy. (Dkt. 1 at ¶ 37; Dkt. 1-2; Dkt. 1-6).

Almost two years later in March 2023, Semmler and Adobe notified Hometown that they were seeking additional "unforeseen" payments under the Policy for (1) an updated price list using June 2023 instead of May 2019 prices; (2) costs of wood required to install window trim; and (3) overhead and profit. (*Id.* at ¶¶ 26–27, 36–37; Dkt. 1-7; Dkt. 1-11 at 3). Hometown shared this request with Philadelphia, which they disputed. (Dkt. 1 at ¶ 28; Dkt. 1-8). On June 2, 2023, Philadelphia expressed their position that (1) the updated price list using June 2023 pricing was contrary to the Policy's valuation at the time of the loss on May, 27, 2019; (2) the windows on the properties did not have wood trim at the time of loss and thus constituted non-covered "upgrade[s]" or "additional materials"; and (3) Hometown's appraisal demand improperly sought overhead and profit for Semmler and Adobe in contrast to the agreed scope in the Newman Estimate. (Dkt. 1 at ¶¶ 28, 37, 45, 60–62; Dkts. 1-8–10). As of July 2023, Philadelphia has paid Hometown at least

2

$3,284,416.57 (not including permit costs) and the repairs for 55 of the 63 properties are completed. (Dkt. 1 at ¶¶ 12, 14, 23–24, 68).

On July 7, 2023, Hometown's moved to update its amount of loss estimate to $8,665,635.95 based on Semmler's and Adobe's "unforeseen" payments (the "Semmler Estimate"), then emailed to Philadelphia an "appraisal demand" for the same. (Dkt. 1 at ¶¶ 26, 30; Dkt 1-9 at 114; Dkt 1-10). The Semmler Estimate and Hometown's appraisal demand equated to over $4 million more than the June 2021 agreed-upon Newman Estimate. As Philadelphia believed the appraisal demand improperly implicated questions of "insurance coverage, contract interpretation and law," Philadelphia responded to Hometown's appraisal demand by notifying them they intended to file a declaratory action with this Court. (Dkt. 1 at ¶¶ 33, 34; Dkt. 1-11).

Regarding appraisal, the Policy provides:

> 2. Appraisal
>
> If we and you disagree on the value of the property or the amount of "loss", either may make written demand for an appraisal of the "loss." In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
>   a.  Pay its chosen appraiser; and
>
>   b.  Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim. (Dkt. 1-1 at 167).

On July 31, 2023, Philadelphia filed a three-count Complaint pursuant to Federal Rule of Civil Procedure 57 and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), against Hometown to determine Philadelphia's "rights and responsibilities . . . with respect to Hometown's appraisal demand" and request the Court to find that Hometown's June 2023 price list, construction of new

3

wood framing, and overhead and profit—which are based on Semmler's estimate and Adobe's work—were "impermissibly appraise[d] and resolve[d] through appraisal questions of insurance coverage and law." (Dkt. 1 at ¶¶ 34–35, 43, 58).

In its Answer, Hometown brings the affirmative defenses of breach of contract and breach of the covenant of good faith and fair dealing, and the counterclaims of breach of contract and bad faith. (Dkt. 23 at 21–26). Philadelphia then moved under Federal Rule of Procedure 12(b)(6) and 12(f) to strike the affirmative defenses and dismiss the counterclaims. (Dkt. 24). The Court now addresses Philadelphia's motion.

## DISCUSSION

### I. Counterclaims

Hometown's counterclaims must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 570 (7th Cir. 2023) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, the court may consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it," so long as those facts are "consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (quotation marks omitted).

#### a. Breach of Contract

In Counterclaim I, Hometown characterizes its breach of contract claim as Philadelphia's failure to pay the supplemental costs. (Dkt. 28 at 6). Hometown alleges that Philadelphia breached the insurance contract by "neglect[ing], refus[ing], or fail[ing]" to pay for: (a) an updated price list for the "necessary materials" for the repairs; (b) "necessary wood necessary to install the window

4

capping"; and (c) overhead and profit. (Dkt. 23 at 23). Hometown then states that they "demand[ed] appraisal," but Philadelphia "refus[ed]" to "pay" or "perform its contractual obligations," and instead, filed the declaratory judgment action. (*Id.*) Counterclaim I fails to allege conduct by Philadelphia amounting to a breach, is duplicative of Philadelphia's declaratory judgment action, and is premature.

To level set, "[a] declaratory judgment is available where a party desires a declaration of the legal effect of a proposed or past course of action." *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987). Here, the core of the budding dispute is whether the parties' disagreement over the supplemental payments involves a coverage dispute—a legal issue for a court to determine—or an amount of loss dispute, adjudicated through the appraisal process. Philadelphia seeks to understand the implications of their actions before denying Hometown's appraisal demand.

First, Hometown does not provide facts to display why Philadelphia's handling of the appraisal demand was a purported breach. Second, Hometown does not plead conduct by Philadelphia amounting to a breach other than the current failure to pay the requested "unforeseen" payments, the subject of this action. *See Arch Ins. Co. v. PCH Healthcare Holdings, LLC*, No. 18 CV 02691, 2019 WL 3554062, at *6 (N.D. Ill. Aug. 5, 2019) (dismissing breach of contract counterclaim where defendant "does not allege that [plaintiff] breached the insurance contract in any way except in its refusal to cover the . . . lawsuit thus far"). In fact, Philadelphia has performed under the contract to date, paying Hometown at least $3,284,416.47 before initiating this dispute. (Dkt. 1 at ¶¶ 12, 14, 24). Further, Hometown has not pointed to any breached contract provision; in fact, the complaint and exhibits attached hereto expressly contradict Hometown's allegation.

5

For example, the parties' June 2021 agreement excludes overhead and profit. (Dkt. 1-3). In the end, Hometown's "mere conclusory statements," are insufficient. *Iqbal*, 556 U.S. at 663.

Moreover, Hometown's breach of contract claim is premature. Hometown is not free to litigate the amount of loss until its appraisal demand is rescinded or denied. *See 70th Ct. Condo Ass'n v. Ohio Sec. Ins. Co.*, No. 16 CV 07723, 2016 WL 6582583, at *5 (N.D. Ill. Nov. 7, 2016); Dkt. 1-1 at 167. The Court finds *Hartford Accident and Indemnity Co. v. Zheng Feng Lin* persuasive. No. 20 CV 1415, 2021 WL 538031, at *9 (N.D. Ill. Feb. 15, 2021). There, the plaintiff Hartford filed for a declaration of non-coverage and the defendant Lin filed a counterclaim for breach of contract. *Id.* at *3. The court dismissed Lin's counterclaim for, among other reasons, being premature because Hartford "ha[d] not [been] denied coverage," but rather was awaiting determination. *Id.* at *9. Similarly, while Philadelphia disputed the additional payments requested by Semmler and Adobe through Hometown, (Dkt 1-8), Philadelphia did not deny the appraisal demand but rather filed a declaratory judgment. In fact, if Philadelphia had denied Hometown's appraisal demand, Illinois law would have required their declaratory action be dismissed.[1] *See Travelers Indem. Co. of Am. v. Townes of Cedar Ridge Condo Ass'n*, 207 N.E.3d 361, 365–66 (Ill. 2022) (dismissing action since insurer's denial of appraisal request "terminated any controversy regarding its applicability"). Ultimately, Philadelphia requested this Court to determine whether the three alleged "breaches" by Philadelphia were improper appraisal demands that implicate questions of insurance coverage or law. (*See* Dkt. 1 at 7, 9, 12). As Hometown has not pled that Philadelphia denied their appraisal demand or pointed to any Policy provision that Philadelphia

---

[1] There does not appear to be a choice of law provision in the Policy and the parties have not raised choice of law issues. As this is a diversity suit brought in Illinois, the Court would apply Illinois substantive law here. *See Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 345 (7th Cir. 2010) (citing *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 531 (7th Cir. 1985)); *see also Culvey v. Auto-Owners Ins. Co.*, No. 22 CV 3495, 2023 WL 3074344, at *2 (N.D. Ill. Apr. 25, 2023) (same).

breached thus far, there is no basis for the breach-of-contract claim. Therefore, Hometown's counterclaim must be dismissed.

    b. **Bad Faith**

Next, Hometown alleges bad faith by Philadelphia under 215 ILCS 5/155 for "vexatious and unreasonable" conduct. Hometown states that Philadelphia's improper conduct was "delaying in settling the claim and ultimately refusing to pay out on the claim," and "refusing to pay for certain costs." (Dkt. 23 ¶¶ 15–16). Hometown fails to plead, nor does the Complaint show, sufficient facts to support such an argument. "An insurer's conduct is vexatious and unreasonable when the insurer's behavior was 'willful and without reasonable cause.'" *Scottsdale Ins. Co. v. City of Waukegan*, No. 07 CV 64, 2007 WL 2740521, at *2 (N.D. Ill. Sept. 10, 2007) (quoting *Citizen First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000)). Further, a claim under Section 155 "requires more than a simple denial of coverage, especially where the denial of coverage is reasonable or there is at least a bona fide dispute about it." *Arch Ins. Co.*, 2019 WL 3554062, at *7 (citing *Golden Rule Ins. Co. v. Schwartz*, 786 N.E.2d 1010, 1018 (Ill. 2003) and *Clayton v. Millers First Ins. Cos.*, 892 N.E.2d 613, 620 (Ill. App. Ct. 2008)); *see also Citizen First Nat. Bank*, 200 F.3d at 1110.

In *Arch*, the defendant asserted that the insurance company "failed and refused to pay the claim," but gave "no other allegations . . . let alone specific facts about any egregious conduct" by the insurance company. *Id.* at *7. Similar to *Arch*, there is a bona fide dispute here over whether Hometown's appraisal demand implicated issues of insurance coverage and law. Philadelphia paid Hometown over $3 million under the policy to date. And Hometown's allegation that Philadelphia engaged in "unreasonable delay" falls in the face of the facts: Hometown made their appraisal

7

demand on July 7, 2023; Philadelphia filed the instant action on July 31, 2023. Without more, Counterclaim II compels dismissal.

## II. Affirmative Defenses

Finally, a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Though motions to strike are disfavored, the court has considerable discretion to strike on its own or on a motion by a party. *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). Further, it is appropriate for the court to strike affirmative defenses that "add unnecessary clutter." *Davis v. Elite Mortgage Servs.*, 592 F. Supp. 2d 1052, 1058 (N.D. Ill. 2009) (citing *Heller*, 883 F.2d at 1295); *Green Bay Packaging, Inc. v. Hoganson & Assocs., Inc.*, 362 F. Supp. 78, 82 (N.D. Ill. 1973) ("[R]epetitious and unnecessary pleadings should be stricken.").

Hometown brings as affirmative defenses breach of contract and breach of the covenant of good faith and fair dealing. (Dkt. 23 at 21–23). Admittedly, the Court cannot quite square how these are affirmative defenses to a declaratory judgment action. *See Manley v. Boat/U.S. Inc.*, No. 13 CV 5551, 2016 WL 1213731, at *6 (N.D. Ill. Mar. 29, 2016) ("An affirmative defense asserts that, even if the allegations of the complaint are true, additional facts excuse the defendant from some or all liability.").

Hometown's breach-of-contract affirmative defense is identical in language to the counterclaim. (Dkt. 23 at 21, 23). It is stricken for the same insufficiencies outlined above. As to the breach of the covenant of good faith and fair dealing, the Court must look to the "conduct forming the basis of the complaint" to determine whether it is based on "vexatious and unreasonable" conduct to determine whether it is preempted by Section 155 of the Illinois Insurance Code. 215 ILCS 5/155; *Old Republic Ins. Co. v. Ness, Motley, Loadholt, Richardson &*

8

*Poole, P.A.*, No. 03 CV 5238, 2004 WL 5867645, at *4 (N.D. Ill. June 22, 2004) ("Section 155 is the only means under Illinois law in which to recover damages for the breach of the implied covenant of good faith and fair dealing." (citing *Cramer v. Insurance Exch. Agency*, 675 N.E.2d 897, 900 (Ill. 1996))).

Hometown asserts identical facts and conduct by Philadelphia as the counterclaim for bad faith under Section 155. As the Court already dismissed the counterclaim, the affirmative dismissed is also preempted and dismissed. *Heller Int'l Corp. v. Sharp*, 857 F. Supp. 627, 630 (N.D. Ill. 1994) ("[C]laims based on conduct proscribed by Section 155, however labeled, are preempted."); *Guardian Life Ins. Co. of Am. v. Temen*, No. 94 C 00115, 1995 WL 263482, at *2 (N.D. Ill. May 3, 1995) ("[C]laims for infliction of emotional distress, fraud, misrepresentation and breach of an implied covenant of good faith and fair dealing, for example, all fall within the preemptive scope of section 155."); *Purlee v. Liberty Mut. Fire Ins. Co.*, 631 N.E.2d 433, 448 (Ill. App. 1994) ("We also note that section 155 preempts the filing of a common law action for breach of an implied covenant of good faith and fair dealing and limits damages to the amount stated in the pertinent provisions.").

## CONCLUSION

As a result, the Court, grants Plaintiff Philadelphia Indemnity Insurance Company's Motion to Strike and Dismiss [24] without prejudice.

_____
Virginia M. Kendall
United States District Judge

Date: January 30, 2024

9